**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-290 (APM)** |
| | : | |
| **KELLYE SORELLE,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MOTIONS *IN LIMINE*

Defendant Kellye SoRelle stands charged with participating in a plot to stop, hinder, or delay the Certification of the Electoral College vote on January 6, 2021, and with encouraging her co-conspirators to destroy evidence of their participation in this crime. Her case has been joined for trial with that of two defendants in related Case No. 21-cr-28: Donovan Crowl and James Beeks. Trial is scheduled to begin on July 10, 2023.

As noticed in ECF No. 29, the United States re-raises the motions *in limine* filed in Case No. 21-cr-28, *see* ECF No. 778 in that case, with respect to Defendant SoRelle.   The United States respectfully requests that this Court preclude improper argument or evidence concerning: (1) a public-authority or entrapment-by-estoppel defense; (2) any defense based on the actions or inaction of law enforcement; (3) any defense based on the actions of other rioters or the status, disposition, and pendency of their cases or charges; (4) and any defense based on diminished mental or physical capacity; and (5) cross-examination of any witness with the Secret Service.   As set forth below, the above-referenced categories of evidence would confuse the issues, mislead the jury, cause undue delay, or waste time and therefore should be precluded pursuant to Federal Rule of Evidence 403.

## BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election.  While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building.  As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.[1]

The evidence at trial will show that Defendant SoRelle and her co-conspirators participated in this attack on the Capitol as part of a conspiracy to prevent, hinder, or delay the Certification proceeding on January 6.  Based on this conduct, Defendant SoRelle has been charged with conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k)  (Count One); and obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Two); and entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Three).  ECF No. 1.  She is additionally charged with tampering with documents, in violation of 18 U.S.C. §§ 1512(b)(2)(A)-(b) (Count Four) for corruptly persuading or attempting to persuade others to destroy evidence of their or their co-conspirators' involvement in these crimes.  *Id.*

Motions in *limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)).  The

---

[1] The government incorporates by reference the factual background set forth in its prior pleadings in *United States v. Donovan Crowl, et al.*, No. 21-cr-28-APM, and the related matter of *United States v. Elmer Stewart Rhodes, et al*, No. 22-cr-15-APM.

government presents these issues to the Court to ensure an efficient trial.

## **ARGUMENT**

**Motion *in Limine* No. 1:      The Court Should Preclude the Defense from Raising a Public Authority of Entrapment-by-Estoppel Defense.**

Defendant SoRelle and her co-defendants at trial should be precluded from raising a public-authority or entrapment-by-estoppel defense at trial.   Having failed to provide notice as required under the Federal Rules of Criminal Procedure, the defendants are foreclosed from raising the defense in the first instance. As to the merits, the defendants should be precluded from advancing, in opening statement or through witness questioning, the claim that the defendants' actions were authorized by public authority or that they were entrapped.

### **A.  Defendants failed to provide notice pursuant to Federal Rule of Criminal Procedure 12.3(a)(1) of their intent to assert a defense of actual or believed exercise of public authority and are therefore barred from raising such a defense at trial.**

Federal Rule of Criminal Procedure 12.3(a)(1) requires defendants to provide notice if they "intend[ ] to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense."   Such notice must be in writing and be filed with the clerk "within the time provided for filing a pretrial motion, or at any later time the court sets."   Fed. R. Crim. P. 12.3(a)(1).   The notice must contain the law enforcement or federal intelligence agency involved, the specific agency member, and the time during which the defendant claims to have acted with public authority.   Fed. R. Crim. P. 12.3(a)(2)(A)-(C).   A failure to comply allows the court to exclude the testimony of any undisclosed witness except the defendant. Fed. R. Crim. P. 12.3(c).

The defendants have not provided written notice of an intent to raise a public authority defense.   As the deadline for providing such notice has now expired, defendants should be precluded from asserting a defense of public authority.   Fed. R. Crim. P. 12.3(c).

**B.   There is no available public-authority defense because President Trump lacked actual authority to order the defendants' criminal conduct, and any reliance would have been unreasonable.**

Even if notice had been timely, defendants should be precluded from advancing a public authority defense.   "The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'"   *United States v. Fulcher* 250 F.3d 244, 253-54 (4th Cir. 2001); *see* Fed. R. Crim. P. 12.3(a)(1).2   Here, any "public-authority" defense put forth by the defendants would fail for two reasons: no government agent possessed actual authority to order the defendants' criminal actions, and, in any event, it would have been objectively unreasonable to rely on any such order.

First, "[t]he validity of" the public-authority "defense depends upon whether the government agent in fact had authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]."   *United States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994) (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)).   The circuits that have considered the issue are unanimous on that point.   *See, e.g.*, *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("the public authority defense requires the defendant reasonably to rely on . . . actual, not apparent, authority"); *Fulcher*, 250 F.3d at 254 ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *United States*

---

2 "Rule 12.3 sets forth a notice requirement but does not limit or expand the public authority defense," which was defined by federal common law prior to that Rule's adoption. *See, e.g.*, *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994).

*v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes had been established," and therefore describing evidence of the officer's employment with the CIA as likely "immaterial").

President Trump did not have the authority to permit or authorize a conspiracy to prevent, hinder, or delay the Certification proceeding or to use force, intimidation, or threat to prevent members of Congress from discharging their duties and leave the place where those duties were to be discharged.   Nor could he have lawfully sanctioned the attack on the United States Capitol on January 6 or any of the other criminal conduct allegedly perpetrated by defendants.   As Chief Judge Howell wrote last year in rejecting the idea of an entrapment-by-estoppel defense for January 6 defendants:

> [A President] cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021).

The D.C. Circuit came to the same conclusion in *United States v. North*, when addressing Oliver North's contention that President Ronald Reagan authorized his obstruction of Congress in that case. 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990).   The court made clear that "'[n]either the President nor any of [North's] superiors had the legal authority to order anyone to violate the law,' particularly if such 'orders,' explicit or implicit, represented nothing more than [the President's] desires." *Id.* at 891 n.24.   Thus, even if President Trump explicitly called for the defendants to engage in the charged criminal conduct, that could not underlie a public-authority defense or entrapment-by-estoppel.   In any event, that did not happen.

The D.C. Circuit's decision in *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam), is not to the contrary.   In *Barker*, the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office.   The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *North*, 910 F.2d at 879.   The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense.   *Id.*   (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.).   But that portion of *Barker* was not the controlling rationale, and the panel majority in *North* subsequently rejected North's request for an instruction invoking his superiors' "apparent authorization of his action."   *Id.* at 881.   In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom had worked with the CIA, claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here.   *Barker* therefore does not undermine straightforward principle that the President lacks the authority to

empower citizens to oppose by force the authority of the United States, enter restricted Capitol grounds and buildings, obstruct congressional proceedings, or engage in civil disorder.  *See, e.g.*, *North*, 910 F.2d at 891 n.24.

Second, "a defendant makes out a defense of public authority only when he has shown that his reliance on governmental authority was reasonable as well as sincere."  *Burrows*, 36 F.3d at 882; *Fulcher*, 250 F.3d at 254; *Sariles*, 645 F.3d at 318-19.   This reasonableness requirement is necessary to ensure the "uniform enforcement of law"; otherwise, anyone could interpret a public official's actions or statements as authorizing them to engage in criminal conduct.  *Id.* (quoting *United States v. Lansing*, 424 F.2d 225 (9th Cir. 1970)).   Any claim that defendants believed they had been authorized as an agent of the Executive Branch to oppose by force the authority of the United States, or forcibly stop the congressional certification of the vote by breaking into the Capitol would be objectively unreasonable.

## C. There is no available entrapment-by-estoppel defense because the defendants cannot point to a government interpretation of the statutes they are charged with violating on which they reasonably relied.

"The difference between the entrapment by estoppel defense and the public authority defense is not great."  *Burrows*, 36 F.3d at 882; *see also United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) ("The elements that comprise the two defenses are quite similar.").   Courts have narrowly confined the entrapment-by-estoppel defense.   The Supreme Court first adopted a due process defense to entrapment by public officials in *Raley v. Ohio*, 360 U.S. 423 (1959).   In *Raley*, the Supreme Court set aside the convictions of three individuals who refused to answer the questions of the Ohio Un-American Activities Commission, in reliance on inaccurate representations by the Commission "that they had a right to rely on the privilege against self-incrimination" under the Ohio Constitution. 360 U.S. at 425.   The Court held that the convictions

violated the Fourteenth Amendment's Due Process Clause because they involved "the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.* at 438. The Court emphasized that the Commission's advice constituted "active misleading" as to the contours of that "vague and undefined" area of law. *Id.*

A few years later, the Supreme Court revisited the subject in *Cox v. Louisiana*, 379 U.S. 559 (1965). *Cox* reversed the conviction of a protester who had led a group of 2,000 in a civil rights march across the street from a courthouse and was later prosecuted for violating an anti-picketing statute prohibiting demonstrations "near" a courthouse. 379 U.S. at 560, 564-65. The statute did not define that term. *Id.* at 560. The protesters had been "affirmatively told" by "the highest police officials of the city, in the presence of the Sheriff and Mayor," that protesting across the street from the courthouse was lawful under that statute. *Id.* at 571. The Court determined that the statute's ambiguous term "near" necessarily "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," and thus found that the demonstrators "would justifiably tend to rely on [the police's] administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id.* at 568-69. The Court concluded that the local officials' interpretation of "near" was a "limited administrative regulation of traffic" that the protesters reasonably relied on. *Id.* at 569. But it also made clear that a defendant cannot reasonably rely on a law enforcement official's attempt to provide "a waiver of law," which the Court described as "beyond the power of the police." *Id.*

Distilling these cases, recent case law has limited the entrapment-by-estoppel defense to the narrow circumstances in which a defendant reasonably relies on a government agent's

interpretation of a statute that, if accurate, would render the defendant's conduct non-criminal. "To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Cox*, 906 F.3d at 1191; *see also United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) ("[W]e have required that [1] the government official 'actively mislead the defendant; and that the defendant's reliance be [2] actual and [3] reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation."); *Burrows*, 36 F.3d 875 at 882 ("This defense applies when [1] a government official [2] tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime [3] in reasonable reliance on the official's representation." (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)).m   Last year, Chief Judge Howell adopted the Tenth Circuit's four-part test from *Cox* in preliminarily rejecting a Capitol riot defendant's claim to the entrapment-by-estoppel defense.   *See Chrestman*, 525 F. Supp. 3d at 33.

Defendants cannot satisfy any part of the entrapment-by-estoppel test.   The defendants were not actively misled.   Neither in his speech on January 6, 2021, nor beforehand did President Trump or any other government actor purport to interpret the scope of the statutes the defendants are charged with violating.   Said another way, President Trump did not "affirmatively assure[] the defendant[s] that certain conduct [was] legal."   *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice

from official that conduct "was actually legal").   Additionally, although the defendants have referred to the Insurrection Act, 18 U.S.C. §§ 251-254, in hearings and pleadings before this Court, the Act was never actually invoked.   The defendants' expectations of official action cannot give rise to a purported anticipatory public authority defense or entrapment-by-estoppel.   *See United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015) (noting for public authority defense "a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue and the defendant must have reasonably relied on that authorization when engaging in that conduct"); *Baker*, 438 F.3d at 755–56.

As Chief Judge Howell observed last year, an entrapment-by-estoppel defense by a January 6 rioter:

> would not be premised, as it was in *Raley* [and] *Cox*, . . . on a defendant's confusion about the state of the law and a government official's clarifying, if inaccurate, representations. It would instead rely on the premise that a defendant, though aware that his intended conduct was illegal, acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob.

*Chrestman*, 525 F. Supp. 3d at 32; *see also United States v. Smith*, 940 F.2d 710, 715 (1st Cir. 1991) (rejecting entrapment-by-estoppel defense because federal agent allegedly encouraged defendant to keep firearms to assist with undercover operation, but never was alleged "to have represented that keeping the guns was, in fact, *legal*"); *North*, 910 F.2d 843 (noting that "North does not even claim that he relied on *any* 'conclusion or statement of *law*'"). Absent any government statement upon which the defendants could have arguably relied, the analysis can stop here.

**Motion *in Limine* No. 2:**       **The Court Should Preclude Improper Defense Arguments and Evidence Pertaining to Law Enforcement Conduct on January 6, 2021.**

The defendants should be precluded from introducing any evidence or arguing, either directly or indirectly, that law enforcement action or inaction rendered the defendants' actions in the United States Capitol building or grounds lawful, unless the defendants observed or were otherwise aware of such conduct.

### A. This Court should preclude the defendants from arguing that alleged inaction by law enforcement officers made their conduct on January 6, 2021 legal.

The government respectfully requests that the Court bar the defendants from arguing that any failure to act by law enforcement rendered their conduct legal.   As an initial matter, officer inaction may not form the basis for an entrapment-by-estoppel claim.   To establish an entrapment-by-estoppel claim, a defendant must prove:

> that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).   Any inaction on behalf of law enforcement cannot constitute a misrepresentation for purposes of an entrapment-by-estoppel defense.   Under such a reading, a defendant could interpret law enforcement inaction as approval.   This would lead to inconceivable results.

Recently, in another January 6 prosecution, Chief Judge Howell granted the government's request to preclude arguments or testimony suggesting that alleged inaction by law enforcement rendered a defendant's conduct lawful.   *See United States v. Williams*, 1:21-cr-377 (BAH), ECF

No. 87 at p.3.   In granting the government's request, Judge Howell noted that, "Settled caselaw makes clear that officer inaction—whatever the reason for inaction—cannot sanction unlawful conduct." *Id.* (citing *Cox*, 379 U.S. at 569–70; *United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, at 1168–69 (10th Cir. 1999); *Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (en banc)). The court therefore ordered that the defendant "is precluded from arguing that law enforcement, by failing to act or censure his conduct, somehow made any of his otherwise allegedly unlawful conduct lawful." *Id.*   Defendants should be precluded from advancing similar arguments in the instant matter as well.

### B. This Court should preclude the defendants from arguing or presenting evidence of alleged inaction by law enforcement officers unless the defendants specifically observed or were otherwise aware of such conduct.

The government acknowledges that the conduct of law enforcement officers may be relevant to the defendants' state of mind on January 6, 2021.   However, unless defendants were aware of law enforcement's alleged inaction at the time of their entry onto restricted grounds or into the Capitol building (or at the time they committed the other offenses charged in the indictment), any alleged inaction would have no bearing on the defendants' state of mind and therefore would not meet the threshold for relevance. Fed. R. Evid. 401 (Evidence is relevant if it "has any tendency to make a fact more or less probable").

The court granted a similar request from the government to preclude such evidence in *United States v. Williams*, No. 21-cr-377-BAH, ECF No. 87 3-4.   There, Chief Judge Howell acknowledged that, "As a logical matter, however, any action or inaction of which defendant was not aware cannot possibly have had any effect on his state-of-mind and is inadmissible as irrelevant under Federal Rule of Evidence 401." *Id.* at p.3.   The government respectfully requests the Court reach the same conclusion in this case and exclude testimony and evidence of any alleged inaction

by the police as irrelevant, except to the extent the defendants observed or were aware of the alleged inaction by the police when they committed the charged offenses.

**Motion *in Limine* No. 3:**     **The Court Should Preclude Improper Defense Arguments and Evidence Pertaining to the Actions of Other Rioters or their Charges and Case Dispositions.**

The government requests that the Court exclude any evidence or argument pertaining to charges or dispositions in other January 6 cases.   Such evidence or argument, which would implicate procedural events occurring after January 6, has no bearing on the proof of the defendants' alleged criminal conduct that day.   In addition, any such evidence or argument would divert the jury's attention to other defendants and criminal allegations rather than the conduct of these defendants.   Because this would confuse the issues, mislead the jury, cause undue delay, and waste time, Rule 403 independently supports exclusion.

**Motion *in Limine* No. 4:**     **The Court Should Preclude Improper Defense Argument and Evidence Pertaining to Defendants' Diminished Mental or Physical Capacity**

The defendant has not provided notice of an intent to present evidence of physical or mental incapacitation as a defense.   Evidence of a diminished mental or physical capacity should be precluded as untimely and irrelevant.

### A. The Court should exclude evidence pertaining to defendants' diminished mental capacity.

The Insanity Defense Reform Act of 1984 established that "mental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a) (1988). Additionally, under the Federal Rules of Evidence,

> no expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element

of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 639.

In the D.C. Circuit Court of Appeals, mental health evidence has been allowed, "where… the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself." *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995).   Other judges in the D.C. District Court have held that when an expert testifies on this topic, they must limit their testimony to "their diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defect the experts believe the defendant possessed during the relevant time period." *United States v. Gold*, 661 F. Supp. 1127, 1131 (D.D.C. 1987) (quoting *United States v. Frisbee*, 623 F. Supp. 1217, 1223 (N.D. Cal. 1985)).   The district court went on to forbid expert testimony, "directly or indirectly opining on the issue of specific intent." *Id*.

Conspiracy to obstruct Congress and conspiracy to use force, intimidation, or threat to prevent members of Congress from discharging their duties are specific intent crimes, as is obstruction under 18 § U.S.C. 1512(c).   *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990). Nevertheless, it is proper to exclude proposed psychiatric evidence when a defendant is unable to establish a link or relationship between the evidence and the mens rea at issue in the case.   *See United States v. Davis*, 78 F. Supp. 3d 17, 20 (D.D.C. 2015), aff'd, 863 F.3d 894 (D.C. Cir. 2017). The D.C. Circuit Court has addressed this in *United States v. Rogers*, finding, "Courts may exclude relevant psychiatric evidence under Rule 403 [b]ecause psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." 2006 WL 5249745 (internal quotation

marks and citation omitted).

Given the lack of notice or any proffer tying mental health issues to the offenses at hand, all testimony regarding mental health or medications should be precluded.

**B. The Court should preclude evidence pertaining to defendants' diminished physical capacity.**

Expert testimony regarding the physical capacity of the defendants or their veteran disability status is not relevant and should also be precluded.   (Evidence is relevant only if it "has any tendency to make a fact more or less probable … and the fact is of consequence in determining the action."   Fed. R. Evid. 401.

No defendant has provided notice, timely or otherwise, to the government that they intend to proffer evidence relating to physical ailments.   However, in the trials of the related matters, Nos. 22-cr-15-APM and 21-cr-28-APM, defense counsel presented evidence regarding the age and physical limitations of several defendants.   *See United States v. Caldwell*, 1:21-cr-00028 (APM), Transcript of Initial Appearance Feb 12, 2021 at p. 23 ("He is just is a very unusual person who has significant injuries and is 100 percent disabled."); ECF 102 at 1 (Vallejo is a "partially disabled veteran…He has suffered since childhood from asthma—a condition that becomes unbearable outside of the dry Arizona air…").

None of the offenses alleged in the indictment require physical acts to complete.   One can agree to and take acts in furtherance of an unlawful conspiracy without needing to take any physical actions, and there was no particular physical fitness necessary to aid and abet the other crimes charged in the indictment.   Accordingly, evidence of and argument about physical impairments would only serve to confuse the jury and delay the proceedings, and for that reason, the Court should preclude any such testimony under Federal Rule of Evidence 401.

**Motion *in Limine* No. 5:**     **The Court Should Preclude Improper Cross-Examination of Secret Service witnesses about sensitive information regarding their procedures for safeguarding protectees while visiting the Capitol.**

Joined defendants Donovan Crowl and James Beeks stand charged with violating 18 U.S.C. § 231 by obstructing, impeding, and interfering with, or attempting to obstruct, impede, or interfere with, law enforcement officers during the breach of the United States Capitol on January 6, 2021. To meet its burden of proof at trial, the government will call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Michael R. Pence and his two immediate family members, all of whom were present at the Capitol.   This witness will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

However, the very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the function performed by the Secret Service as testified to on direct examination—in this case protecting the Vice President and his family. The defendant should be specifically foreclosed from questioning the witnesses about the following:

(1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur;

(2) Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

### A. This Court Has the Discretion to Limit Cross-Examination of Witnesses at Trial

It is well-established that a district court has the discretion to limit cross examination. *See Alford v. United States,* 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See, e.g.*, *United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds by Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related

to an affirmative defense and not elicited through direct exam). Preventing the defendant from exploring the topics identified above will not infringe her Confrontation Clause right because those topics are not relevant to an element at issue in the case, provide no basis for impeaching the Secret Service witness, and do not implicate any affirmative defense.

### B. Cross-Examination of Secret Service Witnesses Should Be Limited to the Riot's Effect on Their Functions

To prove the charges, the government intends to offer limited testimony about the Secret Service's protection of certain officials on January 6, 2021. First, to establish a violation of 18 U.S.C. § 231(c)(3), the government must prove, among other things, that a civil disorder interfered with a federally protected function. 18 U.S.C. § 231(c)(3); *United States v. Red Feather,* 392 F. Supp. 916, 918-19 (D. S.D. 1975). A "federally protected function" includes any lawful function, operation, or action by a federal agency or officer. 18 U.S.C. § 232(3). Thus, the government must prove that the January 6 breach interfered with a federal agency or federal officer's performance of lawful duties. To meet this element, the government intends to offer the testimony that pursuant to authority under 18 U.S.C. § 3056(a)(1), on January 6, 2021, Secret Service agents were at the Capitol to protect Vice President Pence and two members of his immediate family.3 A Secret Service official is further expected to explain how the events at the Capitol on that date affected the Secret Service's ability to protect Vice President Pence and his family.

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial. Indeed, the Secret Service's general protocols about relocation for safety should be excluded as irrelevant because

---

3 The Secret Service is authorized to protect the Vice President and his immediate family. 18 U.S.C. §§ 3056(1) and (2).

such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, evidence of the nature of Secret Service protective details is not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the Capitol and its grounds were restricted at the time of the events in question. None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value). Broader cross-examination of Secret Service witnesses could compromise national security by needlessly publicizing certain methods, manners, and protocols without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*

### C. The Government Requests an In Camera Proceeding to Determine the Admissibility of Certain Evidence

If this court determines that a hearing is necessary to determine the admissibility of testimony by a witness from the Secret Service, the government requests the hearing be conducted *in camera* and ex parte. As noted, in this case, disclosure of certain information could prove detrimental to the Secret Service's ability to protect high-level government officials and affect our national security. Courts have found that such considerations justify ex parte, in camera proceedings. *See Gilmore v. Palestinian Interim Self-Gov't Auth.,* 843 F.3d 958, 968 (D.C. Cir. 2016) (finding that while ex parte proceedings should be employed to resolve discovery disputes

19

only in extraordinary circumstances, they are appropriate where disclosure could lead to substantial adverse consequences, such as where a party sought intelligence materials generated in the midst of a geopolitical conflict); *United States v. Nixon,* 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles,* 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera ex parte proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor,* 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security."); *United States v. Brown,* 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same).

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests that this Court preclude improper argument or evidence concerning: (1) a public-authority or entrapment-by-estoppel defense; (2) any defense based on the actions or inaction of law enforcement; (3) any defense based on the actions of other rioters or the status, disposition, and pendency of their cases or charges; (4) and any defense based on diminished mental or physical capacity; and (5) cross-examination of any witness with the Secret Service.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:         /s/
Kathryn L. Rakoczy
D.C. Bar No. 994559

Troy A. Edwards, Jr.
Alexandra Hughes
Jeffrey S. Nestler
Assistant United States Attorneys
601 D Street, N.W., Room 5236
Washington, DC   20530